RECEIVED

DEC - 5 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

JUDITH MOUISSET            CIVIL ACTION NO. 03-2292
RUFUS MOUISSET
    *Plaintiffs/counter-defendants*

VS.

                                    MAGISTRATE JUDGE METHVIN
HARTFORD LIFE & ACCIDENT      BY CONSENT OF THE PARTIES
INSURANCE CO.
    *Defendant/counter-plaintiff*

## MEMORANDUM RULING

Before the court are cross-motions for summary judgment on ERISA coverage.[1] Both parties filed oppositions.[2] Plaintiffs also filed a Motion for Leave to File Medical Report and a Motion to File Requested Admission of Fact into the Record.[3]

### *Background*

Judith Mouisset was born on May 28, 1939. She was employed by Province Healthcare Company as a system administrator of rehabilitation and a rehabilitation social worker. On November 15, 2002, Mouisset filed a claim for Short Term Disability ("STD") benefits under a policy issued to Province. Mouisset claimed disability due to diabetes, anemia, and depression.[4] Hartford Life Insurance Company ("Hartford"), serves as the claim administrator for insured persons under the policy.

During its review of Mouisset's claim, Hartford contacted Dr. Richard Tate, who advised that since 1992 Mouisset has had insulin dependent diabetes secondary to coronary artery

---

[1] Rec. Doc. 35 and 49. On November 3, 2005, the Clerk issued an order striking plaintiff's motion for summary judgment because it did not have a memorandum in support. The undersigned, however, concludes that the motion is sufficient, and therefore the order striking the motion is vacated.

[2] Rec. Doc. 42 and 46. On December 2, 2005, Hartford also filed a Reply to Supplemental Memorandum on Behalf of Plaintiff and in Opposition to Plaintiff's Cross Motion for Summary Judgment.

[3] Rec. Doc. 32 and 40.

[4] Administrative Record p. 9.

disease, cerebral vascular accident, hypertension, hypothyroidism, sleep apnea, renal dysfunction, and anemia.[5] The administrative record also includes Dr. Tate's records. In January, 2003, Dr. Tate completed a Certification of Health Care Provider, indicating that Mouisset was unable to perform work of any kind.[6] Further, Hartford obtained medical records from Dr. Stephen Rees, who began treating Mouisset in 1994 and who indicated in 1997 that Mouisset may have fibromyalgia.[7]

On February 6, 2003, Hartford sent a letter to Mouisset denying her request for STD, explaining that the medical evidence did not show that the severity of her symptoms precluded her from working in her occupation.[8] On February 19, 2003, a Hartford representative spoke with Mouisset on the telephone and Mouisset advised that she was going to appeal the denial of her claim.[9] On February 23, 2003, Mouisset appealed the decision.[10] Mouisset requested that, "If this appeal is denied, my attorney has asked that your [sic] send all available records concerning my case to me so that I may have them for our consultation."[11] Further, Mouisset attached to her appeal, a letter from Dr. Rees dated February 11, 2003 stating that Mouisset was unable to continue employment because of the "chronicity and progressive deterioration in her physical condition over the last few years."[12] Hartford did not take formal action on the appeal. Hartford

---

[5] Administrative Record. pps. 9, 25.

[6] Administrative Record p. 18.

[7] Administrative Record 38-107.

[8] Administrative Record pps. 15-17.

[9] Administrative Record p. 2.

[10] Administrative Record pps. 11-14.

[11] Administrative Record p. 13.

[12] Administrative Record p. 14.

alleges that it telephoned Mouisset on March 4, 2003 to determine whether she intended to submit any additional medical records, but admits that no further action was taken.[13]

On November 17, 2003, Mouisset filed a petition in the 15th Judicial District Court requesting that the court award benefits. On December 16, 2003, Hartford removed the action to this court under ERISA. On January 6, 2004, Hartford answered the complaint and requested an award of attorney's fees.[14]

## *Summary Judgment Standard*

The Federal Rules of Civil Procedure provide for summary judgment where no genuine issue as to any material fact exists. Fed.R.Civ.P. 56(c). The threshold inquiry is whether there are any genuine factual issues which require resolution by a finder of fact because they may reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Substantive law dictates which facts are material. Id. The evidence must be reviewed in the light most favorable to nonmover. Id. However, summary judgment should be granted when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict. Little v. Liquid Air Corp., 37 F.3d 1069, 1071 (5th Cir. 1994).

---

[13] Rec. Doc. 35-2 p. 10 of 18. The only information in the record post-dating the appeal are notations on Hartford's Summary Detail Report (Administrative Record p. 1):

| | |
|---|---|
| 02/25/2003 | clmnt called regarding appeals process; advised ltr recvd and 45 day ERISA guideline |
| 03/04/2003 | p/c to see if she is going to submit additional medical. no answer |
| 03/04/2003 | Acknowledgment letter was sent with intent to appeal lang. appeal notice 2/24/03 |
| 10/31/2003 | M [mail] recvd fr Harold L. Savoie ltr |
| 11/07/2003 | file delivered to J. Dailey 11/07/03 |
| 12/05/2003 | reced request for file from legal . . requested from closed |

[14] Rec. Doc. 8.

## *ERISA*

The Standard Plan is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").[15] The proper standard of review in an ERISA case is *de novo* unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the plan administrator is given discretionary authority, the abuse of discretion standard is used and the administrator's decision will be affirmed if it is supported by substantial evidence. Vega v. National Life Ins. Services, 188 F.3d 287 (5th Cir. 1999). "Substantial evidence" is "more than a mere scintilla ... [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Girling Health Care, Inc. v. Shalala, 85 F.3d 211, 215 (5th Cir.1990) (quoting Richardson v.. Perales, 402 U.S. 389, 401 (1971)). When reviewing an administrator's resolution of factual issues, the decision need only fall "somewhere on a continuum of reasonableness – even if it is at the low end." Vega, 188 at 297; Woosley v. Marion Labs., Inc., 934 F.2d 1452 (10th Cir1991)(holding in part that the decision of the administrator need not be the only logical one nor even the best one as long as it is sufficiently supported by facts within her knowledge to counter a claim that the decision was arbitrary or capricious).

There is some modification of the abuse of discretion standard where there exists a self-interested insurer. A "self-interested insurer" is one who serves as both the insurer and the administrator of the plan and potentially benefits from every denied claim. *See* Vega, 188 F.3d at 295. The existence of a conflict of interest is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. Id. at 297. The Fifth Circuit applies a

---

[15]The parties have stipulated that the Plan is governed by ERISA. *See* Rec. Doc. 20.

"sliding scale" approach when addressing potentially conflicted administrators. "The greater the evidence of a conflict on the part of the administrator, the less deferential [the] abuse of discretion standard will be." Id. at 297. If, however, there is no evidence to support a conflict of interest, an administrator's decision will be reviewed "with only a modicum less deference." Id. at 301; *see also* Bowers v. UnumProvident Corp., No. 01- 0046, 2002 WL 10467, at *4 (E.D.La. Jan. 2, 2002) (noting that the plaintiff "has advanced no evidence specifically indicating a conflict ... [and] has offered no evidence of financial arrangements that would illuminate the nature of the alleged conflict"); Dew v. Metro. Life Ins. Co., 69 F.Supp.2d 898, 902 (S.D.Tex.1999) (stating that plaintiff's "only evidence of a conflict is [Defendant's] position as both insurer and administrator ... the evidence does not support a degree of conflict other than minimal").

## *Analysis*

### *Applicable standard*

The parties do not dispute that the plan in this case vests the administrator with discretionary authority to determine eligibility for benefits and to construe the terms of the plan and that the abuse of discretions standard is applicable.[16] The Fifth Circuit has held that all denials in cases where the plan vests the administrator with discretionary authority, even those without written decisions in accordance with ERISA, are reviewed under the deferential standard of review.[17] Southern Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98 (5th Cir. 1993); *compare*

---

[16] *See* Rec. Doc. 24.

[17] The regulations governing ERISA plans address the appeal process, requiring a full and fair review of the of the claim and the adverse benefit determination, "that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 CFR § 2560.503-1(h). Section 2560.503-1(h) and (i)(3) sets forth that a written decision on disability claims must be made within 45 days of the appeal. Hartford's

Jebian v. Hewlett Packard Co. Employee Benefits Org. Income Prot. Plan, 349F.3d 1098 (9th Cir. 2003) (holding that when an administrator does not issue a written opinion on appeal and the appeal is "deemed denied," the proper standard is *de novo*); Finley v. Hewlett Packard Co. Employee Benefits Org. Income Prot. Plan, 379 F.3d 1168 (10th Cir.) (same holding as Jebian). Thus, Hartford's failure to issue a decision regarding Mouisset's appeal does not affect the standard applied in this case. Accordingly, the abuse of discretion standard is applicable.[18]

Further, Hartford is both the insurer and the plan administrator. Plaintiff, however, does not claim that Hartford has a conflict of interest in administering the plan. Therefore, the court will address Hartford's decision "with only a modicum less deference" than that afforded an administrator operating without a conflict of interest. Vega, 188 F.3d at 301.

*Hartford abused its discretion*

The issue presented is whether Hartford abused its discretion in determining that plaintiff was not eligible for short term disability benefits. The Hartford policy is a plan of "Short Term Disability Insurance [that] provides you with short term income protection if you become

---

plan offers the right to appeal and states that upon a request for review of a claim denial a decision will be made within 45 days. Despite these time requirements, Hartford did not issue a written decision on Mouissett's appeal during the eight month period between Mouissett's appeal and her filing suit.

[18] The abuse of discretion standard also applies to administrator decisions interpreting plan terms, when the plan documents give the administrator discretionary authority to determine eligibility for benefits or to construe plan terms. Rhorer v. Raytheon Eng'rs and Constructors, 181 F.3d 634, 638-39 (5th Cir.1999). The court first determines the correct interpretation of the plan. If the administrator's construction is legally sound, the inquiry ends. If, however, the administrator did not interpret the plan correctly, the court then determines whether the administrator's interpretation constituted an abuse of discretion. Id. at 639-40. Three factors apply at each of the two steps. Id. at 641, 643-44; Wilbur v. ARCO Chem Co., 974 F.2d 631, 637-38 (5th Cir.1992). The six-part analysis applies only to administrative interpretations of the plan terms, not to factual determinations. Trahan v Bellsouth Communications, 847 F.Supp. 54, 56 (W.D. La. 1994). Here, the court has only been presented with issues regarding the administrator's factual determinations. Plaintiff has not identified any terms which were allegedly misinterpreted. Thus, the court will not address the Wilbur factors.

disabled from a covered accident, sickness, or pregnancy."[19] Benefits are payable under the policy when the claimant is totally disabled.[20] "Total Disability" means that you are prevented from "performing the essential duties of your occupation, and as a result, you are earning less than 20% of your pre-disability Weekly Earnings."[21]

On February 6, 2003, Hartford sent a letter to Mouisset explaining the reasons for the denial of her claim:

> The information provided does not establish you are Totally Disabled from doing the essential duties of your occupation as a system administrator of rehabilitation and a rehabilitation social worker. Dr. Tate advised that your diagnosis is Insulin Dependent Diabetes, secondary to Coronary Artery disease, Cerebral Vascular Accident, Hypertension, Hypothyroidsism, Sleep Apnea, Renal Dysfunciton, and Anemia. Dr. Tate indicated you have had this condition since 5/28/92.
>
> Dr. Tate stated your symptoms are shortness of breath and loss of memory that is progressively getting worse. The medication prescribed is Lotrel, Paxil, Trazidone, Glucophage, Niaspan, Synthroid, Actosen, Icarc, Lasix, and Tricar. The restriction and limitations provided by Dr. Tate were no exertion and that you were very limited with functioning and you can not work. The laboratory studies from 11/22/02 revealed your Hemoglobin was slightly low at 11.4 with 12.7-14.7 being within normal limits. The Hematocrit was low at 34.0 with 37.0-47.0 being within normal limits. There was no psychosocial evaluation that document your memory loss or mental deficits reported. The severity of your symptoms was not provided that would establish you have loss of functionality from doing the essential duties of your sedentary occupation. There were no medical information received documenting the severity of your uncontrolled diabetes. Therefore, your claim has been denied and no benefits are payable.
>
> The following information, not previously submitted, is necessary for a determination of your claim. Specifically, any additional medical information that establish you are Totally Disabled from doing the essential duties of your occupation. That information is necessary because the information received does not provide any loss of functionality that would prevent you from doing the essential duties of your occupation. If you would like this information considered,

---

[19] Administrative Record p. 134.

[20] Administrative Record p. 137.

[21] Administrative Record pps. 144-145.

we must receive it as soon as possible. Please send it to the claim office at the address shown on this letterhead.[22]

Mouissett appealed the denial by sending a detailed letter to Hartford, explaining the effect of her symptoms, all of which were already documented by previously submitted medical records:

> My job was interviewing patients for information pertinent to their treatment and recovery. I also spoke with families for information about their needs at home. During the middle of a conversation I would sometimes lose concentration and have no idea what the conversation was about. It got to a point that I avoided families and patients because I felt inadequate. Taking notes did not help much because notes I had taken while talking with the patients and families were so incongruent that they were not useful.
>
> \* \* \*
>
> My job also included entering codes into the computer to report diagnosis and ICD-9 Codes to Medicare. Because I was having so much trouble mentally I was constantly checking and rechecking or having someone else recheck my work, it took twice the time to do what would at one time would be an easy task. Accuracy in this job was very important because it effects Medicare's payment to the hospital.
>
> The stress which I was under greatly effected the IBS [Irritable Bowel Syndrome] which became so bad that any time I left my home I wore a diaper to keep from soiling my clothes.
>
> \* \* \*
>
> [T]here are days that I spend in bed from pain associated with fibromyalgia, I am definitely not pregnant or a substance abuser, unless the 11 prescribed drugs I take every morning and evening count as abusing. These I take not in the hope that I will get well, but in the hope that this day will not be any worse than the day before, or perhaps maybe a little better.[23]

Mouissett attached to her appeal, the February 11, 2003 report of Dr. Rees stating:

---

[22] Administrative Record pps. 15-17.

[23] Administrative Record pps. 11-13.

She is unable to continue employment because of the chronicity and progressive deterioration in her physical condition over the last few years. Her CVAs and fibromyalgia make it difficult for her to concentrate, and her polyarthritis, neuropathy and fibromyalgia preclude any physical activities. I advised her it was medically necessary to seek disability retirement.[24]

Mouissett maintains that Hartford abused its discretion because it did not find her disabled. In support, Mouissett filed a Motion for Leave to File Medical Report and a Motion to File Requested Admission of Fact into the Record attaching the May 31, 2005 report from Dr. Tate. Mouissett maintains that this report along with the administrative record establishes that she was disabled.

"A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator." Vega, 188 F.3d at 299, citations omitted. Since the May 31, 2005 report from Dr. Tate, as well as the additional documents regarding other disability claims that Mouissett has been awarded and which she attached to her Answer to Counterclaim, are not part of the administrative record, the court is precluded from considering those documents. Moreover, Mouissett stipulated that the administrative record filed by Hartford on October 14, 2004 was complete.[25] Accordingly, the court is precluded from considering the additional information, and therefore Mouissett's Motion for Leave to File Medical Report and Motion to File Requested Admission of Fact into the Record are denied.[26]

With respect to Hartford's decision to not award benefits, the undersigned finds that Hartford abused its discretion. Central to Hartford's decision was the fact that the medical

---

[24] Administrative Record p. 14.

[25] Rec. Doc. 24.

[26] Rec. Doc. 32 and 40.

evidence did not show the severity of Mouissett's symptoms. However, although Dr. Rees' records are listed as documents contained in Mouissett's file, Hartford omitted a discussion of the substance of those records from its decision. Dr. Rees' records, and his February 11, 2003 letter, document his treatment of Mouissett from July, 1994 through 2002 (Administrative Record pages 27-107, 111-115), showing a long history of additional impairments suffered by Mouissett.[27] Thus, although Hartford acknowledged that Mouissett had insulin dependent diabetes, secondary to coronary artery disease, cerebral vascular accident, hypertension, hypothyroidism, sleep apnea, renal dysfunction, and anemia, it made no mention of her neuropathy, fibromyalgia, polyarthritis, rotator cuff repairs, mini-strokes, i.e., transient ischemic attacks (TIAs), or stomach problems. Without considering all of Mouissett's impairments, Hartford concluded that Mouissett's symptoms included only shortness of breath and loss of memory, symptoms which Hartford found did not establish that Mouissett suffered a loss of functionality from doing her job as a social work and system administrator.

A review of the record shows that Mouissett has a lengthy medical history, including symptoms of memory loss and a litany of physical problems. For instance, in 1999, Dr. Rees noted that Mouissett was experiencing short term memory deficits which was a matter of concern to him, and that he was going to try "to wean some of her medications that may be affecting her cognition."[28] Additional records indicate that Mouissett had serious cognitive problems:

[I]t does appear that Judith has some short term memory deficits.[29]

---

[27] Administrative Record pps. 14, 18, 61, 65, 66, 67, 89.

[28] Administrative Record p. 59.

[29] Administrative Record 89.

Judith comes in today at the request of many of her coworkers. There has been some concern about some cognitive issues with Judith. They were concerned that possibly she was having more strokes.[30]

Additionally, she says that when she was on vacation a couple weeks ago, she had been doing well, but she got into an area she was not familiar with and just got lost, couldn't think straight, she hadn't had that happen before.[31]

Further, the record contains information regarding Mouissett's chronic shoulder, leg, hand pain, and fibromyalgia:

She tells me that she has noticed some involuntary movement in her right thumb.[32]

Judith comes in today complaining of cramping in both of her calves and down into her left foot.[33]

Her left elbow greater than her right has been bothering her again.[34]

On examination, she continues with fibromyalgic trigger points, but it looks like her left forearm may be more of a lateral epicondylitis.[35]

I believe Judith is suffering from fibromyalgia.[36]

Rotator cuff impingement.[37]

Drs. Rees and Tate opined that Mouissett's diabetes, cerebral vascular accident, hypertension, hypothyroidsism, renal dysfunciton, anemia, fibromyalgia, IBS, and mini-strokes preclude her from working because she cannot concentrate nor perform physical activities.

---

[30] Administrative Record p. 61.

[31] Administrative Record p. 63.

[32] Administrative Record p. 59.

[33] Administrative Record p. 63.

[34] Administrative Record 64.

[35] Administrative Record 65.

[36] Administrative Record 66.

[37] Administrative Record 89.

Hartford did not agree with these physicians' conclusions, however, as noted above, Hartford did not consider all of Mouissett's impairments. Moreover, in referencing her symptoms, Hartford only indicated that Mouissett suffered from shortness of breath and loss of memory – there is no reference to the chronic physical problems well documented in the record. Thus, Hartford did not consider all of the medical evidence before it in determining Mouissett's disability status.

With respect to Mouissett's claim of memory loss, Hartford stated that, "There was no psychosocial evaluation that document your memory loss or mental deficits reported."[38] However, there are three references in the records to Mouissett undergoing cognitive screening:

> I am going to have speech therapy do a cognitive evaluation. We have a precious baseline evaluation. We will compare them.[39]

> Cognitive screening.[40]

> She tells me she is continuing with her cognitive screening with Susan Viguerie. I do not have any formal results from Susan to date...[41]

Hartford did not attempt to obtain the results of the cognitive screening. Rather than asserting that no evaluations were conducted regarding Mouissett's mental deficits, Hartford should have either requested the results of the cognitive screening from the examiner, or at least, complied with its policy terms requiring Hartford to identify additional information necessary for Mouissett to provide in order to complete her claim.[42]

---

[38] Administrative Record 16.

[39] Administrative Record 61.

[40] Administrative Record 86.

[41] Administrative Record 59.

[42] Administrative Record 142.

Finally, Hartford did not choose to have Mouissett undergo an independent medical evaluation. The policy states that, "We may have you examined to determine if you are Disabled." In the face of Mouissett's long medical history and the severity of the symptoms required to even be diagnosed with her impairments (renal failure, mini-strokes, fibromyalgia, IBS), Hartford rejected Mouissett's claim without even obtaining their own examination.

Although considerable deference must be afforded the findings of the plan administrator, the findings must be supported by "substantial evidence," which is "more than a mere scintilla ... [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Girling Health Care, Inc. v. Shalala, 85 F.3d 211, 215 (5th Cir.1990) (quoting Richardson v.. Perales, 402 U.S. 389, 401 (1971)). Here, Hartford's conclusion that the severity of Mouissett's symptoms was not established is simply a conclusory statement which is not supported by substantial evidence. Cognitive studies were conducted, however, Hartford failed to obtain the studies, and Hartford did not consider all of the diagnoses and mental and physical symptoms detailed throughout the record show the disabling nature of Mouissett's condition. Moreover, there is no independent examination indicating that Mouissett's diagnoses and symptoms are not appropriate or otherwise providing substantial evidence supporting Hartford's decision. The court therefore concludes that the administrative record does not contain substantial evidence supporting the decision to deny plaintiff's claim for STD benefits. Accordingly, I find that Hartford abused its discretion in denying Mouissett's claim.

***Rufus Mouisset's claims***

In the Complaint, plaintiffs pray for "judgment herein in favor of the plaintiffs and against the defendant(s) condemning them to pay unto Judith Mouisset and her husband Rufus

Mouisset all of the benefits due under the referenced policy..."[43] It is undisputed that Rufus Mouisset did not file a claim for benefits with Hartford, and therefore Hartford is entitled to summary judgment on his claims.

Although ERISA itself is silent on the question of exhaustion of administrative remedies, the Fifth Circuit has adopted the reasoning of the Ninth Circuit in concluding that the common law and Congressional intent contemplate that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain benefits wrongfully denied. See Chailland v. Brown & Root, Inc., 45 F.3d 947, 950 (5th Cir.1995) (noting that the Third, Ninth, and Tenth Circuits do not require exhaustion – Zipf v. American Telephone & Telegraph Co., 799 F.2d 889, 891-94 (3rd Cir.1986); Amaro v. Continental Can Co., 724 F.2d 747, 750-52 (9th Cir.1984); Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1204-05 (10th Cir.1990) – while the Seventh Circuit vests district courts with discretion to require exhaustion, Kross v. Western Electric Co., 701 F.2d 1238, 1243-45 (7th Cir.1983), and the Eleventh Circuit apparently requires it. Mason v. Continental Group, Inc., 763 F.2d 1219, 1225-27 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986)), citing Denton v. First National Bank, 765 F.2d 1295, 1300-03 (5th Cir.1985)).

Since Rufus Mouisset has not exhausted his administrative remedies, his claims are premature and Hartford is entitled to summary judgment dismissing Mouisset's claims.

### *Conclusion*

For the foregoing reasons, the court concludes that Hartford abused its discretion in finding that Judith Mouissett was not eligible for disability benefits and there are no genuine

---

[43] Rec. Doc. 1.

issues of material fact thereto. Accordingly, Judith Mouissett is entitled to summary judgment as a matter of law. Further, since Rufus Mouissett's claims are premature, Hartford is entitled to summary judgment as a matter of law on his claims.

Signed at Lafayette, Louisiana on __December 5__, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140     FAX 593-5155